UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDRES CORTES ARANGO,

                    Petitioner,

        v.

JULIO HERNANDEZ et al.,

                    Respondents.

CASE NO. 2:26-cv-02203-LK

ORDER GRANTING IN PART
AND DENYING IN PART
PETITION FOR HABEAS CORPUS

This matter comes before the Court on a petition for Writ of Habeas Corpus filed by petitioner Andres Cortes Arango. Dkt. No. 1; *see also* Dkt. No. 14 (severing two other Petitioners). For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I.    BACKGROUND

Petitioner Andres Cortes Arango is a citizen of Colombia. Dkt. No. 3 at 2. He entered the United States near El Paso, Texas on April 16, 2024 to seek asylum after receiving "threats to stop protesting" against the Colombian government and experiencing "an attack on [his] life." *Id.* On

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 1

April 25, 2024, U.S. Citizenship and Immigration Services ("USCIS") determined that he had established a credible fear. Dkt. No. 8 at 5. Cortes Arango subsequently moved to Washington. Dkt. No. 3 at 2.

On April 28, 2024, Cortes Arango was served a Notice to Appear ("NTA") charging him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(a)(6)(C)(i)), as a noncitizen present in the United States without being admitted or paroled. Dkt. No. 8 at 5; Dkt. No. 9-4. On the same day, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") released him on an Order of Release on Recognizance ("OREC"). Dkt. No. 8 at 5. The OREC stated that his release was contingent on his successful participation in the Alternatives to Detention ("ATD") program. Dkt. No. 9-5 at 3. "During a routine case review, ERO officers discovered that [Cortes Arango] had multiple ATD violations," including "failed" home visits and missed biometric check-ins. Dkt. No. 8 at 5–6.

For his part, Cortes Arango avers that he "always complied with the requirements of [his] release to the best of [his] ability," and he believed that he was meeting all the program requirements. Dkt. No. 3 at 2. According to Cortes Arango, he had problems with the technology of the ATD application, but he never missed an in-person appointment at the Intensive Supervision Appearance Program ("ISAP") office. *Id.* at 3–4.

"On May 1, 2026, ERO management reviewed [Cortes Arango's] case and then cancelled [his] OREC due to ATD violations which violated [his] OREC terms." Dkt. No. 8 at 6. On the same day, ERO detained Cortes Arango when he went to the ISAP office for his regularly scheduled check-in. *Id.* He was served with a Memorandum of Cancellation of Form I-220A. *Id.*; Dkt. No. 9-6. Cortes Arango "provided a record of sworn statement" at that time, and ERO served him with a warrant of arrest and notice of custody determination. Dkt. No. 8 at 6. On the same day, Cortes Arango was transferred to the NWIPC. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 2

Cortes Arango avers that when he was re-detained, he was told that he "was being detained because [he] had commit[t]ed 20 'crimes,'" but he was not given any opportunity to explain. Dkt. No. 3 at 5. At the NWIPC, he learned for the first time when reviewing his I-213 that the "crimes" were alleged ATD violations. *Id.* at 5–6. Cortes Arango is in the process of applying for asylum, *id.* at 6, and he has a merits hearing scheduled for August 26, 2026. Dkt. No. 8 at 6.

Cortes Arango and two other petitioners filed a habeas petition on June 24, 2026. Dkt. No. 1. Respondents[2] filed a return on July 9, 2026, Dkt. No. 7, and Petitioners filed a traverse on July 14, 2026, Dkt. No. 10. The Court subsequently ordered Petitioners to show cause why their three unrelated petitions should not be severed. Dkt. No. 12. After considering Petitioners' response, Dkt. No. 13, the Court ordered severance of the three petitions and retained this one, Dkt. No. 14.

## II.   DISCUSSION

Cortes Arango contends that the government violated his due process rights by re-detaining him "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 1 at 24. He requests an order "immediately release[ing] [him] from custody and restor[ing] [him] to the same conditions as those in place prior to [his] re-detention, unless Respondents choose to impose less restrictive conditions[.]" *Id.* at 25. He also requests that the Court "[i]mmediately and permanently enjoin Respondents from re-detaining [him] during the pendency of [his] removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or danger to the community and that no

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

alternatives to detention would mitigate those risks[.]" *Id.* Finally, he seeks the return of his property, attorney's fees and costs, and "further relief this Court deems just and proper." *Id.*

Respondents contend that Cortes Arango was not entitled to a pre-deprivation hearing, "procedural due process is flexible and should be individually suited to the circumstances at hand," and at most, a post-deprivation hearing is sufficient. Dkt. No. 7 at 1–2.

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 4

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    Petitioner Has Established a Due Process Violation**

The parties dispute which statute applies to Cortes Arango. *See* Dkt. No. 7 at 2–4; Dkt. No. 10 at 2 n.1. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

      1.    Process Required by the Statute

        *(a) 8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Cortes Arango contends that that 8 U.S.C. § 1226(a) governs his detention, and he relies on other cases from this district so holding. Dkt. No. 10 at 2 n.1. He suggests that the governing statute may not matter ultimately because "this Court has found that individuals subject to detention under § 1225(b) who are released and re-detained also possess a liberty interest protected by the Due Process Clause." *Id.* (citing *Amatbek Uulu v. Scott*, No. 2:26-CV-00774-LK, 2026 WL 865813, at *3 (W.D. Wash. Mar. 30, 2026)). Respondents aver that Cortes Arango is "mandatorily

detained pursuant to 8 U.S.C. § 1225(b)(2)(A)" as an "[a]pplicant[] for admission[.]" Dkt. No. 7 at 2–3 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026)).

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As the Ninth Circuit recently held, "[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). "The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted [noncitizens] present in the United States to mandatory detention, but that this change then went unnoticed and unheeded, with the Executive Branch for the next three decades violating Congress's assertedly unambiguous mandatory detention directive by treating these [noncitizens] as subject to release on bond." *Rodriguez Vazquez*, 2026 WL 2196424, at *3. But "the text, context, and structure of the INA, considered as a whole, did not direct such a significant, yet overlooked, change in the law." *Id.* Moreover, under Respondents' interpretation, "Congress's recent handiwork in the Laken Riley Act," which carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory

detention authority, "would be rendered superfluous, because those aliens subject to § 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States." *Id.* at *20.

Consistent with the Ninth Circuit's interpretation of the governing statutory scheme, the government has treated Cortes Arango as subject to discretionary detention under 8 U.S.C. § 1226 from the time he was released on an OREC until his arrest. Dkt. No. 9-5 at 3 (OREC for Cortes Arango issued "[i]n accordance with section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited July 20, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "*[p]ursuant to section 236(a) of the INA*" (emphasis added)). Furthermore, the I-213 dated May 1, 2026 listed Cortes-Arango as a noncitizen "present without admission or parole"—not "an arriving alien." *See* Dkt. No. 9-6 at 4. Nothing in the record prior to his arrest suggests that his release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225.

Cortes Arango does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) in his petition, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez*

*Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

### (b) Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into

this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. Due Process Requirements

As discussed above, Cortes Arango contends that his Fifth Amendment rights were violated by his re-detention "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 1 at 24. Respondents state that "[t]here is no dispute that [Cortes Arango] did not receive pre-

deprivation hearings prior to [his] release[] being revoked." Dkt. No. 7 at 9. However, according to Respondents, "there is no such standard requirement" and "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

### (a) Constitutionally Protected Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 10

"begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Cortes Arango has been living in the United States since April 2024, almost entirely on an OREC before he was re-detained. Dkt. No. 3 at 2. He spent his time "work[ing] whenever possible" and "build[ing] a community with friends from Colombia and new acquaintances [he] met[.]" *Id.* at 5. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Cortes Arango has an interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 11

being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Cortes Arango has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Cortes Arango.

Turning to the second factor, Respondents purported to detain Cortes Arango under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 7 at 1. Furthermore, Respondents have not shown that Cortes Arango's OREC was revoked by an appropriate official.[3] The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Cortes Arango's liberty, because those procedures allow detention

---

[3] Respondents provide an OREC cancellation form signed by an Assistant Field Office Director, Dkt. No. 9-6 at 2; *see also* Dkt. No. 7 at 10. However, Respondents do not explain how the Assistant Field Office Director was authorized to revoke the OREC; they argue that an assistant field office director "is one of the officers named by 8 CFR § 1236.1(c)(9)," Dkt. No. 7 at 10, but the regulation provides that only the "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9); *see also* 8 C.F.R. § 1236.1(c)(9) (listing district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 12

only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Cortes Arango could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [them] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondents claim that Cortes Arango was re-detained because he violated the terms of his OREC, Dkt. No. 7 at 8, that does not excuse the government's compliance with the applicable regulations. This factor weighs in favor of Cortes Arango.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Cortes Arango.

Under *Mathews*, the Court finds that the United States failed to provide Cortes Arango with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

## C.    The Court Denies the Request for Injunctive Relief

Cortes Arango requests that the Court "[i]mmediately and permanently enjoin Respondents from re-detaining [him] during the pendency of [his] removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 13

evidence that [he] is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 25.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Nowhere in his petition does Cortes Arango allege that his specific re-detention is likely, or that such detention is likely to occur without proper notice and an opportunity to be heard, other than arguing in conclusory fashion that because "he was re-detained while reporting for a scheduled in-office appointment, he faces a significant risk of re-detention if he is released under the same conditions." Dkt. No. 1 at 19. It does not necessarily follow that a requirement for in-office appointments will result in re-detention. Without argument or evidence that unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Id.* (citation modified); *see also Indep. Towers of Wash.*, 350 F.3d at 929 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for injunctive relief preventing his re-detention is denied.

### III. CONCLUSION

For the foregoing reasons, Cortes Arango's petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 14

1. Respondents shall release Cortes Arango from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Cortes Arango any personal property not required to be retained by Respondents by law;

2. The parties shall file a Joint Status Report by August 4, 2026, confirming that Cortes Arango has been released.

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time

spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 3rd day of August, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 16